UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| MISTY DAWN HUDSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:15-CV-108 JD |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | |

**OPINION AND ORDER**

In this case, plaintiff Misty Dawn Hudson appeals the denial of her claim for social security benefits. She argues that an injury she suffered to her lower back left her unable to work, and that the Administrative Law Judge's decision to the contrary is erroneous. For the following reasons, the Court remands this case to the Commissioner for further proceedings.

**I. FACTUAL BACKGROUND**

Misty Dawn Hudson worked as a UPS delivery driver for about 13 years, until she injured her lower back on the job in August 2008 while lifting a heavy delivery. After more conservative treatment failed to improve her condition, she underwent spinal surgery in January 2009. The surgery was not successful, though. Besides failing to alleviate Ms. Hudson's back pain, the surgery left her with neurological symptoms including left foot drop and pain radiating into her legs. She then attended physical therapy and work conditioning for much of the rest of the year, with a fair degree of improvement, but she did not improve to the point that she was able to return to her previous job. Due to her continuing symptoms, Ms. Hudson continued seeking treatment. In August 2011, Ms. Hudson had a spinal cord stimulator implanted, and in

May 2012, she had another surgery to remove the hardware that had been inserted during her first surgery. She was released from her doctor's care in July 2012.

In July 2012, Ms. Hudson filed a claim for social security disability insurance benefits and supplemental security income, asserting that she became disabled following her injury in 2008. An Administrative Law Judge later held a hearing and issued a decision. She found that Ms. Hudson could perform sedentary work with a number of limitations, and that a sufficient number of jobs existed that a person with Ms. Hudson's limitations could perform, so Ms. Hudson did not qualify as disabled under the Social Security Act. The Appeals Council denied review, making the ALJ's decision the final decision of the agency. Ms. Hudson timely filed a complaint seeking judicial review of that decision, and this Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400.

2

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## III. DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

3

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, in between steps three and four, the ALJ must then assess the claimant's Residual Functional Capacity ("RFC"), which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the RFC to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Ms. Hudson raises four arguments in support of her request for remand. She first argues that the ALJ failed to properly consider whether she satisfied a listing at step three. Her second and third arguments relate to the ALJ's evaluation of her residual functional capacity, as she argues that the ALJ improperly assessed her credibility, and that the ALJ failed to build an accurate and logical bridge to her conclusion that Ms. Hudson could crouch "occasionally." Finally, Ms. Hudson argues that even if she was not disabled as of the time of the ALJ's decision, the ALJ erred by failing to consider whether she was entitled to at least a closed period of benefits. The Court agrees with Ms. Hudson as to her third argument, that the ALJ's analysis

of her crouching limitation was deficient, and that this error requires remand. After addressing that argument, the Court briefly addresses Ms. Hudson's remaining contentions, which the parties can address in more depth on remand.

**A.     Crouching Limitation**

Ms. Hudson argues that the ALJ erred by failing to draw an accurate and logical bridge from the evidence to her conclusion that Ms. Hudson was capable of engaging in crouching and crawling "occasionally," as opposed to "never." That distinction was quite important, as the vocational expert testified that a number of jobs would be available to a person with Ms. Hudson's limitations who could crouch and crawl occasionally, but that no jobs would be available to such a person who could never crouch or crawl. (R. 49–51). The Court agrees with Ms. Hudson that the ALJ's decision did not adequately support this finding.

In evaluating Ms. Hudson's residual functional capacity, the ALJ relied largely on three functional capacity evaluations. The most recent of those, which was completed in December 2012 by Dr. Brill, an agency reviewing physician, opined that Ms. Hudson could perform sedentary work, but that she could crouch and crawl only "occasionally," (meaning up to a third of the day), among a variety of other postural and environmental limitations. (R. 84). The ALJ ultimately adopted that opinion in full. Another agency reviewing physician, Dr. Sands, had completed another evaluation about two months earlier, in October 2012. He offered a similar opinion, with one exception: he opined that Ms. Hudson was "never" able to crouch or crawl. (R. 61–62). Ms. Hudson also underwent a functional capacity evaluation by her physical therapist in September 2009, after completing a course of work conditioning. This evaluation found that Ms. Hudson was able to perform light work with various other limitations, including that she could crouch "occasionally." (R. 529, 534).

5

In evaluating these opinions, the ALJ began by explaining that she gave "some weight" to the September 2009 evaluation, but that other evidence led her to believe that a more restrictive limitation to sedentary work, as opposed to light work, was appropriate. The ALJ then stated that she gave "less weight" to Dr. Sands' opinion because of his opinion that Ms. Hudson could "never" crawl or crouch. The ALJ's sole explanation for that finding was that "[t]his elimination of postural limitations is not supported with the overall evidence as a whole." (R. 20). Finally, the ALJ stated that she gave "great weight" to Dr. Brill's opinion, which was that Ms. Hudson could perform sedentary work and could "occasionally" crouch and crawl. The ALJ adopted Dr. Brills' functional capacity evaluation in whole as constituting Ms. Hudson's residual functional capacity.

Ms. Hudson argues that the ALJ's decision failed to build an "accurate and logical bridge" between the evidence and her findings, as is required, *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014), in that the ALJ offered insufficient explanation for adopting Dr. Brill's opinion over Dr. Sands' relative to the crouching and crawling limitations. The Court agrees that the ALJ's explanation as to Dr. Sands' opinion was thin, particularly in light of the importance this distinction played in the outcome of Ms. Hudson's claim. Ultimately, though, the Court finds that the ALJ failed to build the requisite bridge for a more fundamental reason, which is that the ALJ's decision failed to acknowledge an important piece of evidence on this point—Dr. Gorup, Ms. Hudson's treating physician, opined that she could crouch only "rarely," meaning up to "5%" of the time, but the ALJ's decision never acknowledged that opinion. (R. 694–95, 720).

Dr. Gorup began treating Ms. Hudson in November 2008, and performed her spinal surgery in January 2009. (R. 620–23). Thereafter, he continued seeing her on about a monthly basis. In September 2009, Dr. Gorup met with Ms. Hudson to discuss the results of the functional

capacity evaluation that was performed by her physical therapist, noted above. After reviewing those results, Dr. Gorup completed a return-to-work form in which he indicated that Ms. Hudson could return to work "with restrictions." One of those restrictions was the following: "Rare: crouch, squat (5%)." (R. 695). He further stated that these restrictions were permanent. The following week, Dr. Gorup responded to a Request for Medical Information from Ms. Hudson's employer, in which he stated Ms. Hudson's limitations as follows: "[Ms. Hudson] has permanent restrictions of no lifting over 25 lbs., rare – crouch, squat (5%), occasional – stairs (33%), frequent – walk up to 45 min. (66%)." (R. 720).

As an opinion from Ms. Hudson's treating physician about her functional limitations, this opinion was subject to the treating physician rule. Under that rule, "[a] treating physician's opinion is entitled to 'controlling weight' if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.'" *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (quoting *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010)). An ALJ "must offer 'good reasons'" for discounting a treating physician's opinion. *Id.* Here, having failed to acknowledge Dr. Gorup's opinion, the ALJ failed to analyze the opinion under this framework, and offered no reasons for discounting his crouching limitation.

This omission is curious, as the ALJ expressly cited to the same pages of the record that included Dr. Gorup's opinions. (R. 19 (citing Exhibit 6F/42, 67)). However, she did so only in connection with her discussion of the functional capacity evaluation performed by the physical therapist, and may not have understood that this was a distinct opinion offered by Ms. Hudson's treating physician. The ALJ's decision also inaccurately suggests that the residual functional capacity she adopted is as restrictive or more restrictive than the limitations expressed in this

7

evaluation. (R. 19). In doing so, the decision references only the limitations in Dr. Gorup's evaluation that are consistent with its findings, while omitting the crouching limitation, which is not. "An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Campbell*, 627 F.3d at 306; *see also Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) ("Although a written evaluation of each piece of evidence or testimony is not required, neither may the ALJ select and discuss only that evidence that favors his ultimate conclusion."). Dr. Gorup's crouching limitation was directly relevant to an important issue in this case, and it was improper for the ALJ to cite other aspects of his opinions that support her decision while ignoring this limitation.

This error requires remand, as this evidence could support a finding that Ms. Hudson could crouch less than "occasionally," as the ALJ found. Perhaps the vocational expert would testify that a person with Ms. Hudson's limitations who could crouch "rarely" would still be able to perform a sufficient number of jobs, but the vocational expert has not offered that testimony, so the Court cannot find that the Commissioner has satisfied her burden at step five. Dr. Gorup's opinion could also add support for Dr. Sands' opinion that Ms. Hudson should "never" crouch, in which case no jobs would be available, which is another reason why this error is not harmless. The Court rejects Ms. Hudson's undeveloped request for an outright award of benefits, though, as the record is not so one-sided as to compel a finding that she is disabled. Accordingly, this case must be remanded for further proceedings.

**B.     Remaining Arguments**

Because remand is required for the reasons just discussed, the Court need not determine whether any of Ms. Hudson's remaining arguments would present independent bases for remand. However, to aid the parties' consideration of Ms. Hudson's claims on remand, the Court will briefly address those arguments. Ms. Hudson first argues that the ALJ's analysis of the listings at step three was too brief to ensure that the ALJ had considered the relevant evidence and to permit meaningful review. Ms. Hudson is correct that the ALJ's analysis at this step was somewhat cursory, but it is hard to fault the ALJ for that, as Ms. Hudson's counsel expressly disclaimed any contention that she met a listing—at the hearing, counsel began his opening statement by stating, "First, I'll state we do not contend that she meets a listing . . . ." (R. 32). If, however, counsel now believes Ms. Hudson may meet a listing, the parties may take that up with the ALJ on remand. The Court further notes that the two state agency consultants, on whom the ALJ relied, considered Listing 1.04C (pertaining to disorders of the spine that result in an inability to ambulate effectively), (R. 60, 83), whereas the ALJ's decision and Ms. Hudson's present arguments focus more on Listing 1.04A (pertaining to disorders of the spine with evidence of nerve root compression). Thus, if Ms. Hudson pursues Listing 1.04A on remand, it may be appropriate to seek a medical opinion specific to that listing, and it would be helpful for purposes of review for the ALJ to explain her findings on this issue in more detail.

Ms. Hudson also criticizes the ALJ's credibility analysis, as the ALJ found that Ms. Hudson's claims as to the extent of her physical limitations were not fully credible. The ALJ based that finding in large part on the fact that Ms. Hudson had not taken any pain medication in almost two years, which undermined her claim of disabling pain. Ms. Hudson testified at the hearing that the reason for this was that the pain medication did not offer any relief, but the ALJ rejected that explanation, noting that the medical records reflected that "relief from pain

medication is moderate," and that "analgesics are providing adequate relief from pain." (R. 573). Ms. Hudson now argues that this reasoning was improper because long-term use of pain killers can have negative side effects. However, Ms. Hudson did not testify at the hearing that she took no pain medication because of the long-term side effects; she said she took no pain medication because it did not help, and the ALJ reasonably noted that this explanation was inconsistent with the record. If Ms. Hudson can explain that inconsistency or offer another reason why she was not taking pain medication, though, she is free to do so on remand.

Ms. Hudson's other credibility arguments are insubstantial. Ms. Hudson argues that the ALJ did not attribute sufficient weight to her work history, as the Seventh Circuit has noted that a strong work history generally reflects favorably on a claimant's credibility. However, the Seventh Circuit has also stated that "work history is just one factor among many, and it is not dispositive." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). Here, the ALJ expressly noted that Ms. Hudson "has a good work history as a UPS driver until injured at work," and that her work involved medium and heavy exertional levels. (R. 18). No more was required, so long as the ALJ's credibility assessment "is tied to evidence in the record and is not patently wrong." *Reed v. Colvin*, 656 F. App'x 781, 787–88 (7th Cir. 2016). Ms. Hudson also argues that the ALJ erred by placing too much emphasis on her activities of daily living. The Seventh Circuit has often held that ALJs should not equate an ability to perform activities around the house with an ability to perform full-time work, *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012), but Ms. Hudson has not shown how the ALJ committed such an error here. In fact, in the portions of the ALJ's decision that Ms. Hudson cites, the ALJ discredited Ms. Hudson's self-reported limitations as to her activities of daily living, finding such severe limitations to be unsupported

by the record; she did not credit the description of those activities and equate them to an ability to perform full-time work, as in *Bjornson*.

Finally, Ms. Hudson argues that the ALJ should have at least awarded a closed period of disability benefits, even if she found that Ms. Hudson was not disabled as of the time of the hearing. Ms. Hudson argues that the ALJ erred by failing to adequately explain why she was not disabled for at least a 12-month period, though her brief does not develop this argument or show why the ALJ's discussion of the evidence throughout the claimed period of disability was insufficient for these purposes. *See Reed*, 656 F. App'x at 788 (holding that the ALJ need not have separately explained why the claimant was not disabled for at least 12 months, as the decision explained how the evidence over the relevant period supported the RFC finding). Regardless, if the ALJ should find on remand that Ms. Hudson is not disabled, it would be helpful for the decision to also acknowledge and address Ms. Hudson's request for a closed period of benefits, particularly if the decision relies at least in part on Ms. Hudson's improvement over time, as does the present decision.

## IV.  CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED:  January 20. 2017

/s/ JON E. DEGUILIO  
Judge  
United States District Court